No. 25-3373

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

————————————

MILLENNIA HOUSING MANAGEMENT, LTD.; CHERRY ESTATES LP;
CHERRY ESTATES INVESTMENT, LLC; FLUSHING ELMCREST LIMITED
DIVIDEND HOUSING ASSOCIATION LIMITED PARTNERSHIP; ELMCREST
INVESTMENT, LLC; COVENANT APARTMENTS LP; COVENANT
APARTMENTS INVESTMENT, LLC; COVENANT PROJECT, LLC; BETHEL
TOWER LIMITED DIVIDEND HOUSING ASSOCIATION LIMITED
PARTNERSHIP; BETHEL TOWER INVESTMENT, LLC; TRAIL WEST, LTD.;
TRAIL WEST INVESTMENT, LLC; TRAIL WEST HOUSING PARTNERS,
INC.; ROBINSON HEIGHTS APARTMENTS I, LP; ROBINSON HEIGHTS
APARTMENTS INVESTMENT I, LLC; HICKORY CREEK ESTATES, LTD.;
HICKORY CREEK ESTATES INVESTMENT, LLC; SHERMAN THOMPSON
OH, TC, LP; SHERMAN THOMPSON TOWERS INVESTMENT, LLC;
HIGHLAND PLACE ASSOCIATES I, LTD.; HIGHLAND PLACE
INVESTMENT I, LLC; PETOSKY RIVERVIEW LIMITED DIVIDEND
HOUSING ASSOCIATION LIMITED PARTNERSHIP; PETOSKEY
RIVERVIEW INVESTMENT, LLC; OAKDALE ESTATES, LTD.; OAKDALE
ESTATES II INVESTMENT, LLC; OAKDALE ESTATES INVESTMENT GP,
LLC; OAKDALE ESTATES INVESTMENT LLC; MORNING STAR TOWER,
LTD.; MORNING STAR TOWER INVESTMENT, LLC; INTERNATIONAL
TOWERS I OHIO, LTD.; INTERNATIONAL TOWER INVESTMENT I, LLC;
YMHA HOUSING PRESERVATION, LLC; KINGSBURY TOWER I, LTD.;
KINGSBURY TOWER INVESTMENT I, LLC; HUNTER'S RUN
INVESTMENT, LLC; HALTON HR INVESTORS, LLC; HWFB HR
INVESTMENT, LLC; HALTON SPRINGS INVESTMENTS, LLC; FRANK
SINITO

*Plaintiffs-Appellants*

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN
DEVELOPMENT, a federal administrative agency, SCOTT TURNER in his
official capacity as Secretary of the United States Department of Housing and
Urban Development, JULIA GORDON in her official capacity as Assistant
Secretary for Housing - Federal Housing Commissioner, United States Department

of Housing and Urban Development, SCOTT KNITTLE, in his official capacity as
Principal Deputy General Counsel, United States Department of Housing and
Urban Development, and ALEXANDER FERNANDEZ-PONS, in his official
capacity as Administrative Law Judge, United States Department of Housing and
Urban Development

*Defendants-Appellees*

_____

On Appeal from the United States District Court for the Northern District of Ohio,
No. 1:24-cv-02084

_____

**EMERGENCY MOTION OF PLAINTIFF-APPELLANTS
FOR INJUNCION PENDING APPEAL**

_____

Marisa T. Darden
Matthew D. Ridings
Johanes C. Maliza
Peter J. Sullivan, Jr.
BENESCH FRIEDLANDER COPLAN &
ARONOFF LLP
127 Public Square, Suite 4900
Cleveland, OH 44114
216-363-4500
MDarden@beneschlaw.com
MRidings@beneschlaw.com
JMaliza@beneschlaw.com
PSullivan@beneschlaw.com

May 27, 2025

## <u>TABLE OF CONTENTS</u>

**I.**   **Appellants are likely to succeed on the merits of their Seventh Amendment and Article III claims.** ...............................................8

    *A.*   *The District Court has subject-matter jurisdiction to rule on the Seventh Amendment and Article III claims.* ...................8

    *B.*   *The District Court erred on the merits of Appellants' Seventh Amendment and Article III claims.* ....................................10

    *C.*   *The District Court erred in finding the "public rights" exception applies.* ....................................................................11

**II.**   **Appellants will suffer irreparable injury by being deprived of their Seventh Amendment rights.** ...........................................12

**III.**   **The balance of equities favors injunctive relief.** ......................................13

**IV.**   **Appellants are likely to succeed on the merits of their Article II claims** ............................................................................14

**V.**   **Appellants will suffer irreparable harm without an injunction pending appeal.** .............................................................18

**VI.**   **The balance of equities weighs in favor of Appellants and an injunction is in the public interest.** ...........................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A. Philip Randolph Inst. v. Husted*,
  907 F.3d 913 (6th Cir. 2018) ..................................................................6

*Associated Mortg. Bankers, Inc. v. Carson*,
  2019 WL 108882 (D.D.C. Jan. 4, 2019)...............................................7

*AT&T, Inc. v. FCC*,
  135 F.4th 230 (5th Cir. 2025) ...............................................................6

*Axon Enterprises v. FTC*,
  598 U.S. 175 (2023)...................................................................*passim*

*Bays v. City of Fairborn*,
  668 F.3d 814 (6th Cir. 2012) ...............................................................13

*Beacon Theatres, Inc. v. Westover*,
  359 U.S. 500 (1959)..............................................................................13

*Beil v. Lakewood Eng'g & Mfg. Co.*,
  15 F.3d 546 (6th Cir. 1994) ...................................................................5

*Burgess v. FDIC*,
  639 F. Supp. 3d 732 (N.D. Tex. 2022) ..................................................6

*Calcutt v. Fed. Deposit Ins. Corp.*,
  37 F.4th 293 (6th Cir. 2022). (App. 218) ....................................*passim*

*Coal. to Defend Affirmative Action v. Granholm*,
  473 F.3d 237 (6th Cir. 2006) .................................................................5

*Cohens v. Virginia*,
  19 U.S. 264 (1821)................................................................................19

*Collins v. Yellen*,
  594 U.S. 220 (2021)...............................................................4, 7, 18, 19

*Crump v. Lafler*,
  657 F.3d 393 (6th Cir. 2011) ...............................................................18

*Curtis v. Loether,*
    481 U.S. 189 (1974).........................................................................10

*Dairy Queen, Inc. v. Wood,*
    369 U.S. 469 (1962)...................................................................11, 13

*In re DeLorean Motor Co.,*
    755 F.2d 1223 (6th Cir. 1985) ...........................................................6

*Edmond v. United States,*
    520 U.S. 651 (1997)..........................................................................16

*Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.,*
    561 U.S. 477 (2010)...........................................................9, 15, 17, 20

*Granfinanciera, SA v. Nordberg,*
    492 US 33 (1989)................................................................................11

*Hartman v. Acton,*
    613 F. Supp. 3d 1015 (S.D. Ohio 2020)..........................................12

*League of Women Voters of U.S. v. Newby,*
    838 F.3d 1 (D.C. Cir. 2016)..............................................................20

*Lucia v. SEC,*
    585 U.S. 237 (2018).........................................................7, 16, 17, 19

*Mich. Coal. Of Radioactive Material Users, Inc. v. Griepentrog,*
    945 F.2d 150 (6th Cir. 1991) ...........................................................12

*Michigan State A. Philip Randolph Institute v. Johnson,*
    833 F.3d 656 (6th Cir. 2016) ...........................................................12

*Morrison v. Olson,*
    487 U.S. 654 (1988)..........................................................................16

*Nken v. Holder,*
    566 U.S. 418 (2009)..........................................................................13

*of Nashville v. Metro. Gov't of Nashville & Davidson Cnty.,*
    274, F.3d 377, 400 (6th Cir. 2001) ..................................................14

*S.E.C. v. Jarkesy*,
603 U.S. 109 (2024)..................................................................3, 10, 11, 12

*Sec'y of Educ. Review of ALJ Decisions*,
15 Op. O.L.C 8 (1991) ..........................................................................17

*Seila Law LLC v. CFPB*,
591 U.S. 197 (2020)................................................................15, 16, 17, 19

*Seton v. Nat'l Lab. Rels. Bd*,
2024 WL 4678057 (W.D. Tex. 2024).......................................................7

*Shawnee Tribe v. Mnuchin*,
984 F.3d 94 (D.C. Cir. 2021)................................................................14

*Space Exploration Techs. Corp. v. NLRB*,
741 F. Supp. 3d 630 (W.D. Tex. 2024) ..................................................7

*Stern v. Marshall*,
564 U.S. 462 (2011).........................................................................11, 12

*Thunder Basin Coal Co. v. Reich*,
510 U.S. 200 (1994).....................................................................4, 6, 8, 9

*Tull v. U.S.*,
481 U.S. 412 (1987).........................................................................10, 11

*U.S. Dist. Court v. Cheney*,
542 U.S. 367 (2004)..............................................................................13

*United States v. Arthrex, Inc.*,
594 U.S. 1 (2021)..................................................................................17

*United States v. Perkins*,
116 U.S. 483 (1886)..............................................................................16

*Walmart Inc. v. King*,
No. CV 623-040, 2024 WL 1258223 (S.D. Ga. Mar. 25, 2024).........7

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008)....................................................................................5

*YAPP USA Automotive Sys., Inc. v. NLRB*,
    2024 WL 448958 (6th Cir. 2024) ........................................................18

**Statutes**

5 U.S.C. § 7521(a) ...............................................................................15

28 U.S.C. § 1291 ....................................................................................5

28 U.S.C. § 1292(a)(1).............................................................................5

28 U.S.C. § 1331 ....................................................................................8

**Other Authorities**

24 C.F.R. § 26.2 ...................................................................................16

24 C.F.R. § 30.80 .................................................................................11

## INTRODUCTION

Plaintiffs-Appellants ("Appellants") submit this emergency motion to enjoin pending appeal the imminent and irreparable constitutional injury Appellants brought this suit to avert. On June 2, 2025, the United States Department of Housing and Urban Development's ("HUD") Office of Hearings and Appeals ("OHA") will begin a civil money penalty hearing against Appellants. HUD's case, which seeks money penalties as punishment for alleged contract breaches, belongs in a district court under Article III of the Constitution and must be decided by a jury under the Seventh Amendment. Instead, a HUD Administrative Law Judge ("ALJ"), with unconstitutional multi-layer removal protection presides, over his agency's case, ruling on substantive and procedural motions and finding binding facts.

Appellants objected to these constitutional violations in OHA and in this action. But OHA refused a stay (App. 223) to allow courts to resolve the constitutional questions, and the district court denied Appellants' motion for summary judgment and entered it for the Government. (App. 189). The district court did so *even though the Government* agrees that the ALJ's removal protections violate Article II of the Constitution. (App. 184-85, ¶¶ 82-88). On May 22, 2025, the district court denied Appellants' motion for an injunction pending appeal (App. 233), and a few hours later the ALJ rejected Appellants' constitutional claims. The OHA hearing will begin on June 2, 2025 (App. 237).

1

Without an injunction pending appeal from this Court, the ALJ's refusal to enter a stay will be the conclusive word on whether Appellants must suffer the constitutional injuries to which they object: subjection to authority in an unconstitutional forum, before an unconstitutional ALJ, without the constitutionally guaranteed right to a jury.

## STATEMENT OF THE CASE

Appellants provide affordable housing to low-income tenants across the country.  In early 2024, HUD brought civil money penalty ("CMP") actions in OHA alleging Appellants breached the contracts governing HUD's provision of mortgage insurance.  HUD seeks nearly $7,000,000 in CMPs against Appellants.  A consolidated hearing before an ALJ will begin June 2, 2025.  (App. 237).

On November 27, 2024, Appellants filed a complaint and a motion for preliminary injunction in the Northern District of Ohio.  (App. 24).  The complaint sought to enjoin HUD from holding the CMP hearing in the OHA.  (*Id.* at 38). Relying on *S.E.C. v. Jarkesy*, 603 U.S. 109 (2024), Appellants argued the OHA proceeding deprives them of their Seventh Amendment jury right and Article III right to have their case heard in a court.  (App. 33-38).

Appellants amended the complaint, further challenging the HUD ALJ's multilayer removal protection, which violates Article II of the Constitution.  (App. 105).  On March 12, 2025, Appellants moved the district court for summary judgment and a permanent injunction.  (App. 19).  The government agrees HUD ALJs are unconstitutionally protected from removal but contends the hearing should go forward nonetheless.  (App. 184-85, ¶¶ 82-88). There are no material facts in dispute.  (App. 174).

The district court denied Appellants' motion for summary judgment and permanent injunction and granted summary judgment in favor of the Government. (App. 189). The court held *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), deprived it of jurisdiction to hear Appellants' Seventh Amendment and Article III Claims. (App. 190, 199). The district court held that even if it did have jurisdiction, the HUD OHA case is not legal in nature, (App. 199), and even if it is, the "public rights" exception applies. (App. 199). The district court held it did have jurisdiction to rule on the HUD ALJ's removal protections, (App.211), but that the ALJ is an inferior officer who exercises no policymaking duties and does not impair the president's executive powers. (App. 211). Even if the ALJ enjoys unconstitutional removal protection, the court held Appellants are not entitled to relief enjoining an unconstitutional proceeding absent a further showing of compensable harm under *Collins v. Yellen*, 594 U.S. 220 (2021), and *Calcutt v. Fed. Deposit Ins. Corp.*, 37 F.4th 293 (6th Cir. 2022). (App. 218).

Appellants filed a notice of appeal on May 9, 2025, within 30 days of the district court's April 28, 2025 ruling. (App. 224). After the HUD ALJ denied Appellants' request for a stay, (App. 233), Appellants moved the district court for an injunction pending appeal, on May 19, 2025. (App. 21). The district court denied Appellants' motion on May 22, 2025, declining to reconsider its analysis and stating that any injunction pending appeal would contravene *Calcutt*. (App. 227-29).

The district court's denial of injunctive relief is appealable under 28 U.S.C. §
1292(a)(1).  The grant of summary judgment in favor of the Government is a final
appealable order under 28 U.S.C. § 1291. *Beil v. Lakewood Eng'g & Mfg. Co.*, 15
F.3d 546, 551 (6th Cir. 1994).

## ARGUMENT

Appellants seek prospective relief from having to submit to unconstitutional
agency authority.  The only way this Court gets to decide if Appellants have a right
to such prospective relief is if it enjoins the June 2 HUD OHA hearing.  Denying the
injunction pending appeal is thus a substantive and conclusive ruling that Appellants
are not entitled to prospective relief even if their constitutional claims are correct.

The Court should grant an injunction pending appeal because (1) Appellants
are likely to succeed on the merits; (2) they will suffer irreparable harm absent an
injunction; (3) the balance of equities tips in favor of an injunction; and (4) injunctive
relief is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7,
20 (2008); *Coal. to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 243-44
(6th Cir. 2006).  Even if Appellants might not succeed on the merits, an injunction
pending appeal is still appropriate where the movant shows "serious questions going
to the merits and irreparable harm which decidedly outweighs any potential harm to
the defendant" or if "the merits present a sufficiently serious question to justify

further investigation." *In re DeLorean Motor Co*., 755 F.2d 1223, 1229-30 (6th Cir. 1985) (quotations omitted). The Sixth Circuit has held that

> These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together . . . To justify the granting of a stay . . . a movant need not always establish a high probability of success on the merits . . . The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay. Simply stated, more of one excuses less of the other.

*A. Philip Randolph Inst. v. Husted*, 907 F.3d 913, 918–19 (6th Cir. 2018) (internal citations omitted).

That Appellants will suffer irreparable harm is indisputable: They "protest the 'here-and-now' injury of subjection to an unconstitutionally structured decisionmaking process," which will be "*impossible to remedy* once the proceeding is over." *Axon Enterprises v. FTC*, 598 U.S. 175, 192 (2023) (emphasis added). And this case raises serious constitutional questions. Courts in other circuits have held, under *Thunder Basin*, they have jurisdiction over similar Article III and Seventh Amendment challenges. *See, e.g., Burgess v. FDIC*, 639 F. Supp. 3d 732, 736 (N.D. Tex. 2022). Similarly situated parties have won arguments that agency tribunals violate the Seventh Amendment, and that the public rights exception is not invoked just because Congress passed a statute. *AT&T, Inc. v. FCC*, 135 F.4th 230, 238-41 (5th Cir. 2025).

Other courts have held multi-layer removal protections for ALJs are unconstitutional, *e.g.*, *Space Exploration Techs. Corp. v. NLRB*, 741 F. Supp. 3d 630, 640-41 (W.D. Tex. 2024); *Walmart Inc. v. King*, No. CV 623-040, 2024 WL 1258223, at *3 (S.D. Ga. Mar. 25, 2024), and they are inferior officers exercising the president's executive authority. *Lucia v. SEC*, 585 U.S. 237, 249 (2018) (SEC ALJs are inferior officers); *see also Associated Mortg. Bankers, Inc. v. Carson*, 2019 WL 108882, *5 (D.D.C. Jan. 4, 2019) (*Lucia*'s reasoning extends to HUD ALJs). Even *the Government* now agrees. Last, other courts have held that where an agency will imminently subject a party to unconstitutional authority, no further harm showing is required before enjoining that here-and-now injury. *See*, *e.g.*, *Seton v. Nat'l Lab. Rels. Bd*, 2024 WL 4678057, at *2 (W.D. Tex. 2024); *Walmart*, 2024 WL 1258223, at *4. Neither the Supreme Court's *Collins* decision nor this Court's *Calcutt* decision—addressing challenges to already-completed actions—can be read to require such a showing in this entirely distinct prospective posture.

An injunction pending appeal in this case would allow *this* Court to decide these constitutional questions instead of the OHA calendar.

I.    **Appellants are likely to succeed on the merits of their Seventh Amendment and Article III claims.**

A.    *The District Court has subject-matter jurisdiction to rule on the Seventh Amendment and Article III claims.*

The District Court has jurisdiction over Appellants' Seventh Amendment and Article III claims. An "ordinary statutory review scheme does not preclude a district court from entertaining constitutional challenges to an agency's structure." *Axon*, 598 U.S. at 180. Appellants' claims go directly to HUD's OHA enforcement structure. Every CMP action HUD files before OHA instead of a district court violates Article III by placing the case in an executive tribunal, and the unconstitutionally insulated ALJ decides the facts that a jury should decide.

Irrespective of typical agency exhaustion under the APA, federal courts can review ongoing hearings if the case satisfies the *Thunder Basin* test: (1) the statutory scheme forecloses all meaningful judicial review; (2) the claims are "wholly collateral" to the statute's review provision; and (3) the claim is outside of the agency's area of expertise. 510 U.S. at 212. If these factors are satisfied, federal courts have jurisdiction under 28 U.S.C. § 1331 without administrative exhaustion.

In this case, HUD's statutory scheme forecloses any meaningful judicial relief. Appellants *prospectively* object to the OHA hearing as unconstitutional. But under the district court's logic, there is no right to prospectively have that claim heard. So even if Appellants are right that the Constitution protects them from a

hearing, Appellants still must go to the hearing and appeal to the Secretary before they can have a court say so.  Moreover, if the ALJ or Secretary agrees with them, they will have gone to the hearing and *never* get a court's opinion unless HUD appeals.  Thus, merely having the hearing renders Appellants' case here "impossible to remedy."  *Axon*, 598 U.S. at 191.  Appellants would suffer the same harm regardless of whether they win before the ALJ, they would still have been subjected to a constitutional violation for which there is no remedy. *Id.*

The second *Thunder Basin* factor also supports district court jurisdiction.  A challenge is collateral when it does not relate to the subject of enforcement actions. *Id.* at 193.  Appellants' claims in this case are collateral to HUD's statute-based administrative review "because [Appellants] are challenging [HUD's] power to proceed at all" in the OHA, "rather than actions taken in the agency proceedings." *Id.* at 192.  Appellants contend the OHA hearing is unconstitutional and request adjudication by an Article III tribunal and jury trial.  Their claims go directly to the constitutional defects within HUD's procedural framework and are prototypical collateral claims.

The third *Thunder Basin* factor also supports jurisdiction.  Constitutional claims are outside the agency's expertise. *Axon*, 598 U.S. at 194.  "They are instead standard questions of [] law, which the courts are at no disadvantage in answering." *Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 491

(2010). Indeed, "agency adjudications are generally ill-suited to address structural constitutional challenges," *Axon*, 598 U.S. at 195, which the Government has acknowledged. (App. 203).

### B. The District Court erred on the merits of Appellants' Seventh Amendment and Article III claims.

HUD's claims are legal in nature. The Seventh Amendment requires a jury trial in all actions where the claim is legal in nature and implicates a private right. *Jarkesy*, 603 U.S. at 121. "To determine whether a claim is legal in nature," courts must "consider the cause of action and the remedy it provides," with the remedy being the "more important consideration." *Id.* at 122-23. Here, both the remedy and the nature of the claims implicate the Seventh Amendment.

Contrary to the holding below, HUD does not seek an equitable remedy. A remedy is only equitable if it is meant "*solely* to serve a remedial purpose." *Id.* (emphasis added). If it "also serv[es] either retributive or deterrent purposes," it "is punishment, and therefore legal in nature." *Id.* (quoting *Austin v. United States*, 509 U.S. 602, 610 (1993)). Legal remedies seek to punish culpable individuals, *Curtis v. Loether*, 481 U.S. 189, 196 (1974), while equitable remedies seek only to restore the status quo. *Tull v. U.S.*, 481 U.S. 412, 424 (1987).

In the OHA, HUD seeks to impose CMPs totaling $7,000,000. That far exceeds any alleged harms HUD has suffered. The relevant regulatory factors used by HUD "to determine the amount of [the] penalty" including "[t]he gravity of the

offense," "history of prior offenses," "[d]eterrence of future violations," and "[t]he degree of the violator's culpability." 24 C.F.R. § 30.80. Those factors sound in law, not equity. *See Jarkesy*, 603 U.S. at 122-23; *Tull*, 481 U.S. at 423. As their name reflects, HUD's civil money *penalties* have retributive and deterrent purposes beyond restoring the status quo. That is dispositive. *See Jarkesy*, 603 U.S. at 122-23.

The common law nature of the claim—the less important factor under *Granfinanciera, SA v. Nordberg*, 492 US 33, 42 (1989)—also shows the legal nature of HUD's action. These claims are about contract breaches, specifically the Regulatory Agreements and the Project Owner's/Management Agent's Certification ("POMAC"). Actions to enforce contractual obligations are wholly legal under the Seventh Amendment. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477 (1962) ("As an action on a debt allegedly due under a contract, it would be difficult to conceive of an action more traditionally legal in character."); *Jarkesy*, 603 U.S. at 122 (action by the Government for CMPs is historically an action in debt).

## C.    *The District Court erred in applying the "public rights" exception.*

The District Court incorrectly found the "public rights" exception to the Seventh Amendment would apply if there were jurisdiction, and if the case is legal in nature. Private rights cases are those "made of 'the stuff of traditional actions at common law tried by the courts at Westminster in 1789.'" *Stern v. Marshall*, 564

U.S. 462, 484 (2011); *Jarkesy*, 603 U.S. at 127-28.  If the claim is in the nature of an action at common law, it presumptively concerns a private right, and an Article III court is mandatory.  *Stern*, 564 U.S. at 484.

The public rights exception applies in cases such as Indian regulations, immigration, or tariffs where the political branches have traditionally plenary power. *Jarkesy*, 603 U.S. at 130.  The public rights exception must be narrowly construed and not expanded.  *Id*. at 131.  "Congress cannot conjure away the Seventh Amendment by mandating that traditional legal claims be . . . taken to an administrative tribunal."  *Id.* at 135.  Since no political branch traditionally held exclusive power over contracts governing mortgages, or mortgage insurance, HUD's breach of contract claims in OHA are not within the public rights exception.

## II.  **Appellants will suffer irreparable injury by being deprived of their Seventh Amendment rights.**

The OHA hearing before the ALJ directly implicates Appellants' Seventh Amendment rights and their right to be heard in an Article III court.  Appellants' harm is "both certain and immediate"—indeed imminent.  *Mich. Coal. Of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991).  "When constitutional rights are threatened or impaired, irreparable injury is presumed." *Michigan State A. Philip Randolph Institute v. Johnson*, 833 F.3d 656, 669 (6th Cir. 2016); *Hartman v. Acton*, 613 F. Supp. 3d 1015, 1025 (S.D. Ohio 2020) ("where irreparable harm is based upon a violation of a plaintiff's constitutional

rights, that violation, no matter how temporary, is sufficient to show irreparable harm").

Being subject to the HUD OHA's authority, without a jury to decide facts, constitutes a here-and-now injury that cannot be remedied after a hearing. *See Axon*, 598 U.S. at 143. "Judicial review of the structural constitutional claims would thus come too late to be meaningful." *Id.* Without an injunction pending appeal, Appellant will lose the ability to avoid being subjected to unconstitutional agency authority. The Supreme Court has repeatedly held that *mandamus*—which inherently requires there be "no other adequate means" of relief, including "the regular appeals process," *U.S. Dist. Court v. Cheney*, 542 U.S. 367, 381-82 (2004)— is available to prevent lower courts from trying cases subject to the Seventh Amendment without a jury. *See Dairy Queen*, 369 U.S. at 472 (federal courts have the responsibility "to grant mandamus where necessary to protect the constitutional right to trial by jury"); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 511 (1959) ("[T]he right to grant mandamus to require jury trial where it has been improperly denied is settled.").

## III.    The balance of equities favors injunctive relief.

Where the Government is a defendant, the harm to the opposing party and the public interest factors merge. *Nken v. Holder*, 566 U.S. 418, 435 (2009). It "is always in the public interest to prevent the violation of a party's constitutional rights." *Bays*

*v. City of Fairborn*, 668 F.3d 814, 825 (6th Cir. 2012).  In cases where "the plaintiff shows a substantial likelihood that the challenged law is unconstitutional, no substantial harm to others can be said to inhere its enjoinment." *Déjà vu of Nashville v. Metro. Gov't of Nashville & Davidson Cnty.*, 274, F.3d 377, 400 (6th Cir. 2001).  By contrast, the Government suffers no cognizable harm from halting "unlawful agency action." *Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 102 (D.C. Cir. 2021).

If Appellants' Seventh Amendment arguments *might* have merit, then Appellants will be forever harmed by denying the injunction pending appeal, and the courts will not get the chance to decide them.  Conversely, HUD loses nothing if this Court grants the injunction pending appeal.  HUD's sole witness at the hearing is a HUD employee, whose presence they can ensure in a few months' time after this hearing.  The rest of the case will be HUD presenting documents that it already possesses.  Either HUD wins in court, and the case proceeds at OHA in a few months, or Appellants win, and HUD can bring their case in a federal district court.  The balance of equities tips in favor of granting Appellants injunctive relief pending appeal.

## IV.    Appellants are likely to succeed on the merits of their Article II claims.

HUD ALJs—inferior officers who exercise significant policymaking and administrative authority—are unconstitutionally insulated from removal by multilayer for-cause removal protections.  The district court correctly held HUD

ALJs are inferior officers, but incorrectly held that *Seila Law LLC v. CFPB*, 591 U.S. 197 (2020), and *Free Enterprise Fund* do not apply because they exercise no policymaking duties and do not impair the president's executive power. (App. 211). Even the Government disagrees. Its position is that ALJs' removal protections violate the Constitution. (App. 184-85, ¶¶ 82-88).

HUD ALJs may only be removed for good cause established and determined by the Merit Systems Protection Board. ("MSPB") 5 U.S.C. § 7521(a). A member of the MSPB may only be removed by the president for "inefficiency, neglect of duty, or malfeasance in office." *Id.* § 1202(d). These removal restrictions infringe on the president's power and duty to "take care that the Laws be faithfully executed." U.S. CONST. ART. II, §3, which requires the president to have the power "to remove—and thus supervise—those who wield executive power on his behalf." *Seila Law*, 591 U.S. at 204.

The general rule is the president's removal power is unrestricted. *Id.* at 215. There are only two exceptions: multimember expert agencies—not applicable here—and inferior officers with limited duties and no policymaking or administrative authority. *Id.* at 218. The HUD ALJ fits neither of those conditions.

There are two recognized examples of inferior officers with limited duties and no policymaking or administrative authority. The first dealt with a low-ranking naval cadet-engineer who was found to be protected from removal absent a finding

15

of misconduct or conviction by court martial. *United States v. Perkins*, 116 U.S. 483, 483-85 (1886).  The second case upheld a "good cause" removal restriction on the Attorney General's ability to remove an independent counsel specifically appointed to investigate and prosecute certain crimes by high-ranking officials. *Morrison v. Olson*, 487 U.S. 654, 691-92 (1988).  In both cases, the inferior officers had limited responsibilities, and the removal restrictions were modest.  *See id.* at 692 (independent counsel could be removed for any misconduct); *cf. Edmond v. United States*, 520 U.S. 651, 661 (1997) (recognizing analogous trial-level "military judges" are not "limited" in "tenure" or "jurisdiction" as *Morrison*'s independent counsel was).  *Seila Law* confirms that these cases define "the outermost constitutional limits of permissible" removal protections for inferior officers; they are not "a freestanding invitation for . . . additional restrictions."  591 U.S. at 218, 228.   But the district court created a new exception for ALJs.

Contrary to the district court's holding, HUD ALJs wield expansive authority—both administrative and policymaking.  They oversee adversarial hearings, supervise discovery, issue subpoenas, rule on motions, oversee admissibility of evidence, administer oaths, and decide issues of law and fact, 24 C.F.R. § 26.2, "exercis[ing] authority comparable to that of a federal district judge," *Lucia*, 585 U.S. at 242.   They wield discretion that critically shapes the administrative record, *Id.* at 248, and by implementing and enforcing ambiguous

16

statutes, "determine, on a case-by-case basis, the policy of an executive branch agency." *Sec'y of Educ. Review of ALJ Decisions*, 15 Op. O.L.C 8, 14-15 (1991). These are not limited duties, but rather significant "exercises of . . . the 'executive Power,' for which the President is ultimately responsible"; therefore, HUD ALJs "must remain dependent upon the President." *United States v. Arthrex, Inc.*, 594 U.S. 1, 14 (2021). That dependence includes the essential removal power: Even when principal officers can "relieve [inferior officers] of authority" or "amend" their actions after the fact, such supervisory "power over [their] functions is not equivalent to" and "cannot substitute for" "the power to remove" them. *Free Enter. Fund*, 561 U.S. at 504.

ALJs' *multilevel* protection compounds the constitutional affront. Just as in *Free Enterprise Fund*, the statutory scheme "not only protects [ALJs] from removal except for good cause, but withdraws from the President any decision on whether that good cause exists." *Id.* at 495. "The result is [ALJs] not accountable to the President, and a President who is not responsible for [ALJs]." *Id.*[1]

---

[1] Contrary to the district court's reasoning, ALJs are not uniquely exempt from the Supreme Court's prohibition on multilevel protection. (App. 213-17). The district court invoked a footnote from *Free Enterprise Fund* that merely stated—as part of a broader disavowal of "general pronouncements on matters neither briefed nor argued," 561 U.S. at 506—that the Court was "not address[ing]" ALJs either way, *id.* at 507 n.10. At that time, it was unclear whether ALJs were even "officers," in part because their powers are "adjudicative." *Id.* But the Court has since held that ALJs *are* officers, *Lucia*, 585 U.S. at 248-51; that executive adjudication exercises executive power, *Seila Law*, 591 U.S. at 216 n.2.; and that "unrestricted removal" is the "general rule," *id.* at 215.

Given their role, the broad scope of their duties, and the executive power they wield, HUD's ALJs do not fall under the *Perkins/Morrison* exception and their insulation from presidential removal is unconstitutional. The second level of insulation takes HUD ALJs even farther beyond constitutional limits.

## V.     Appellants will suffer irreparable harm without an injunction pending appeal.

Appellants will suffer irreparable injury from being subjected to an unconstitutionally structured enforcement scheme, before an unaccountable ALJ. *See Axon*, 598 U.S. at 192. An injunction pending appeal is necessary, because once the June 2 hearing gores forward, the harm of being subjected to unlawful agency authority "cannot be undone." *Id.*

The district court, however, held that *Collins* and *Calcutt* require a specific showing of prejudice or harm before a party may receive injunctive relief against pending unconstitutionally structured agency proceedings.[2] But that fundamentally misreads *Collins* and *Calcutt*. Neither of those cases dealt with any request to enjoin *future* unlawful agency actions; they exclusively addressed challenges to *past* actions, alleged to have been unlawful when made due to the taint of the challenged removal restrictions. *See Collins*, 594 U.S. at 257; *Calcutt*, 37 F.4th at 301, 316.

---

[2] The district court also relied on an unpublished motion ruling, *YAPP USA Automotive Sys., Inc. v. NLRB*, 2024 WL 448958 (6th Cir. 2024), which is not binding, *see Crump v. Lafler*, 657 F.3d 393, 405 (6th Cir. 2011).

In *Collins*, the challengers were seeking to retrospectively unwind actions the tenure-protected officer had taken years earlier. The Supreme Court held the removal restriction was unconstitutional but explained that its unlawfulness "d[id] not strip [the official] of the power to" take the challenged actions, because "[s]ettled precedent . . . confirm[ed]" it was severable. 594 U.S. at 258 n.23 (citing *Seila Law*, 591 U.S. 232-38).[3] It nonetheless gave the challengers an opportunity to show the removal restriction had inflicted some "compensable harm" for which retrospective relief would be proper. *Id.* at 258-59.

In *Calcutt*, a case on petition for review of a final agency order after the adjudication had "ended," this Court applied the *Collins* harm test to an Article II challenge to the ALJ's removal protection. 37 F.4th at 316. *Calcutt*'s statements that *Collins* applies "whether the petitioner seeks retrospective or prospective relief," *id.*, must "be taken in connection with the case in which" they were made. *Cohens*

---

[3] *Collins* specifically cited *Seila Law*'s analysis of a materially identical removal-restriction provision's severability, which was "necessary" to determine whether the *Seila Law* agency could "continue to exist and operate notwithstanding Congress's unconstitutional attempt to insulate [its] Director from removal by the President." 591 U.S. at 232; *see also Axon*, 598 U.S. at 189 (recognizing, post-*Collins*, that the instant constitutional claims "would likewise prevent ALJs . . . from exercising any power, unless they lose their double-for-cause tenure protection" through "sever[ance]"). Here, the district court did not consider severability, ignoring that *Collins*' application of *Seila Law*'s severability holding was *essential* to finding "that the unlawfulness of the removal provision d[id] not strip [the officer] of the power to" lawfully wield executive power. 594 U.S. at 257 n.23.

Here, the ALJs' adjudicatory powers *cannot* be severed from their unconstitutional removal protections because "[t]he substantial independence that the Administrative Procedure Act's removal protections provide to [ALJs] is a central part of the Act's overall scheme." *Lucia*, 585 U.S. at 260 (Breyer, J., concurring in the judgment in part). This dilemma underscores the importance of adjudication by an independent, Article III judge.

*v. Virginia*, 19 U.S. 264, 399 (1821). The requested relief was vacatur of a past agency action; it was "prospective" only in the sense that the agency order, itself, imposed "prospective effect[s]," which would naturally dissolve if it were vacated (like when this Court vacates an injunction entered by a district court). 37 F.4th at 316. Such back-end relief, however characterized, is categorically different from purely-forward-looking injunctive relief to *prevent ongoing or future* unlawful actions.

Here, Appellants seek the latter relief to avert "the 'here-and-now' injury," "impossible to remedy" later, "of subjection to an unconstitutionally structured decisionmaking process" "irrespective of its outcome." *Axon*, 598 U.S. at 191-93. Importing *Collins*' remedial test to this distinct context makes nonsense of the Supreme Court's opinion in *Axon* and improperly overrules *Free Enterprise Fund*'s holding that forward-looking equitable relief is proper to "prevent[] [government] entities from acting unconstitutionally." 561 U.S. at 491 n.2; *see id.* at 513.

## VI. The balance of equities weighs in favor of Appellants and an injunction is in the public interest.

The equitable factors weigh heavily in favor of an injunction pending appeal. Where the government is a defendant, the harm to the opposing party and public interest factors merge. *See supra,* Sec. III. The government suffers no harm from stopping "the perpetuation of unlawful agency action." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 13 (D.C. Cir. 2016), or at least letting the courts decide

whether the proceedings are unconstitutional and deciding whether Appellants can seek prospective relief from alleged constitutional harms. The balance of harms and the public interest weigh in favor of injunctive relief for the same reasons recited above. *See supra,* Sec. III.

## CONCLUSION

The June 2 HUD OHA hearing will violate the Constitution in three ways. Appellants will be denied their Seventh Amendment right to a jury trial and an Article III forum for a contract case, and the hearing will proceed before an ALJ with unconstitutional removal protection.  Whatever happens at that hearing, merely having to appear in OHA on June 2 constitutes a here-and-now injury.  If no injunction is entered pending appeal, Appellants' constitutional concerns – and the important questions they raise for interpretation of Supreme Court precedents – will be decided by HUD OHA's denial of a stay, instead of by the federal courts.

For the foregoing reasons, this Court should grant an injunction pending appeal.

Dated: May 27, 2025                    Respectfully submitted,


                                       */s/    Peter J. Sullivan Jr*
                                       Marisa T. Darden
                                       Matthew D. Ridings
                                       Johanes C. Maliza
                                       Peter J. Sullivan, Jr.
                                       BENESCH FRIEDLANDER
                                         COPLAN & ARONOFF LLP
                                       127 Public Square, Suite 4900
                                       Cleveland, OH 44114
                                       216-363-4500
                                       MDarden@beneschlaw.com
                                       MRidings@beneschlaw.com
                                       JMaliza@beneschlaw.com
                                       PSullivan@beneschlaw.com

                                       *Attorneys for Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(g) and Sixth Circuit Rule 32(a), the undersigned certifies that:

This motion complies with the type-volume limitations Federal Rule of Appellate Procedure 27(d)(2)(A) and (B) and Sixth Circuit Rule 32(b)(1). This brief contains 5,196 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Sixth Circuit Rule 32(b)(1).

This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 27(d)(1)(D) as it is prepared using a proportionally spaced typeface: Times New Roman, font size 14.

Dated: May 27, 2025                          /s/      *Peter J. Sullivan Jr*
                                             Peter J. Sullivan Jr.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 27, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that I have emailed courtesy copies of the foregoing document to the case participants identified below.


Daniel Aguilar
U.S. Department of Justice
Civil Division, Appellate Staff
950 Pennsylvania Ave NW.
Washington, D.C. 20005
Daniel.j.aguilar@usdoj.gov

*Attorneys for Appellants*

*/s/     Peter J. Sullivan Jr.*
Peter J. Sullivan Jr.
